In the Matter of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, v ANTHONY AMATO et al., Respondents. (Proceeding No. 1.)

In the Matter of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, v JOHN RUTHERFORD et al., Respondents. (Proceeding No. 2.)

Second Department, June 29, 1987

## APPEARANCES OF COUNSEL

*Diamond, Rutman & Costello (Bertram Herman, P. C.,* of counsel), for appellant in proceedings Nos. 1 and 2.

*Peter L. Zimroth, Corporation Counsel (Stephen J. McGrath* and *Lori Finsterwald* of counsel), for City of New York and another, respondents in proceedings Nos. 1 and 2.

*Bert W. Subin (Weinraub & Haines [Sally Weinraub]* of counsel), for John Rutherford and another, respondents in proceeding No. 2.

*Waxman, Miller & Trautwig, P. C. (Glenn H. Shore* of counsel), for Aetna Casualty & Surety Company and another, additional respondents in proceeding No. 2.

## OPINION OF THE COURT

Mangano, J. P.

The question to be resolved on the instant appeal is whether the City of New York (hereinafter the city) is obligated, as an unregulated self-insurer, to provide uninsured motorist coverage to two of its policemen who were injured when the New York City police vehicles in which they were riding were struck by uninsured motor vehicles. In our view, this question must be answered in the affirmative.

### PROCEEDING NO. 1

The respondent Anthony Amato, a New York City police officer, was injured on April 26, 1982, when the police scooter in which he was riding was struck by a motor vehicle owned by one David Cohen. Cohen's insurer, the Wausau Insurance Company (hereinafter Wausau), advised Amato that the Cohen vehicle was stolen at the time of the accident and therefore it would not provide Amato with coverage under Cohen's policy. The city denied Amato uninsured motorist protection on the ground that "[s]ection 320 of the New York State Vehicle and Traffic Law excludes Municipalities from providing [uninsured motorist] coverage", and suggested that Amato pursue his claim with the Motor Vehicle Accident Indemnification Corporation (hereinafter MVAIC). MVAIC denied Amato's claim, and he then filed an uninsured motorist claim with the petitioner State Farm Mutual Automobile Insurance Company (hereinafter State Farm), the insurer of his own personal

automobile, pursuant to the uninsured motorist indorsement contained in his policy with State Farm. After the claim was denied, Amato demanded arbitration of his uninsured motorist claim from State Farm.

In August 1984, State Farm commenced proceeding No. 1 to stay arbitration and, in conjunction with its petition, requested that the city, the Police Department of the City of New York (hereinafter the Police Department), David Cohen, and Wausau be made parties to the proceeding as additional respondents. In its petition, State Farm argued, *inter alia,* that even assuming, arguendo, that the Cohen car was stolen, and was therefore an uninsured vehicle at the time of the accident, it was incumbent upon Amato to pursue his uninsured motorist claim with the city since established precedent of "the Appellate Division and the Court of Appeals" had held that the city was obligated to "afford uninsured motorist coverage on its vehicles".

By order dated September 14, 1984, Special Term (LeVine, J.), temporarily stayed arbitration and granted State Farm's request to join the city, the Police Department, David Cohen, and Wausau in the proceeding as additional respondents. The matter was set down for a hearing to determine whether or not the vehicle owned by Cohen was stolen at the time of the accident, and if so, whether State Farm or the city was required to furnish uninsured motorist coverage to Amato.

At the conclusion of the hearing held on July 19, 1985, Special Term (Graci, J.), found that the vehicle owned by Cohen was stolen at the time of the accident and held that State Farm, as the insurer of Amato's own personal automobile, rather than the city, was required to afford uninsured motorist coverage to Amato. With respect to the latter holding, the court rejected State Farm's argument that the city had to provide uninsured motorist coverage to Amato pursuant to the holding in *Matter of Country-Wide Ins. Co. (Manning)* (96 AD2d 471, *affd* 62 NY2d 748). Instead, the court accepted the city's argument that *Matter of Country-Wide Ins. Co. (Manning) (supra),* was inapplicable, on the ground that under Insurance Law § 5202 (a), uninsured motorist coverage did not have to be provided by the city when a police car was involved in a motor vehicle accident. By judgment dated April 29, 1986, State Farm's petition to permanently stay arbitration was denied, and it was directed to proceed to arbitration with its insured, Amato.

PROCEEDING NO. 2

John Rutherford, a New York City police officer, was injured on February 5, 1984, when the police car in which he was riding and which was stopped at a red light was struck in the rear by a vehicle owned and operated by Robert McCary. McCary's insurance company, Aetna Casualty & Surety Company (hereinafter Aetna), denied coverage to Rutherford (and to his wife, Leslie Rutherford, on her derivative claim) based on the fact that McCary's car was uninsured on the date of the accident. The Rutherfords filed a claim with MVAIC, but the claim was denied on the ground that John Rutherford was individually insured by State Farm. The Rutherfords then filed an uninsured motorist claim with State Farm, the insurer of his own personal automobile, pursuant to the uninsured motorist indorsement contained in his policy with State Farm. That claim was rejected by State Farm on the ground that the "primary insurance carrier would be the city which is self-insured and the vehicle in which the insured was riding was a [New York] City police vehicle". The Rutherfords then demanded arbitration of their uninsured motorist claim from State Farm.

In February 1985, State Farm commenced proceeding No. 2 to stay arbitration and, in conjunction with the petition, requested that the city, the Police Department, Aetna, and McCary be made parties to the proceeding as additional respondents. In its petition, State Farm argued, *inter alia,* that even assuming, arguendo, that the McCary car was uninsured at the time of the accident, it was incumbent upon the Rutherfords "[u]nder the latest set of cases" to make their claim for uninsured motorist coverage "to the City of New York as owner of the host vehicle".

By order dated April 18, 1985, Special Term (Goldstein, J.), temporarily stayed arbitration "pending determination of the issues raised in the moving papers", and granted State Farm's request to join the city, the Police Department, Aetna, and Robert McCary in the proceeding as additional respondents.

At the conclusion of the hearing on July 15, 1985, Special Term (Graci, J.), found that the McCary vehicle was uninsured on the date of the accident, and therefore Aetna was not obligated to provide any insurance benefits to the Rutherfords. The court rejected State Farm's argument that the city had to provide uninsured motorist coverage to the Rutherfords pursuant to the holding in *Matter of Country-Wide Ins. Co. (Man-*

*ning)* (96 AD2d 471, *affd* 62 NY2d 748, *supra).* Instead, the court held, as it did in proceeding No. 1, that *Matter of Country-Wide Ins. Co. (Manning) (supra),* was inapplicable, on the ground that under Insurance Law § 5202 (a), uninsured motorist coverage did not have to be provided by the city when a police car was involved in a motor vehicle accident. By judgment dated September 11, 1986, the court (Graci, J.), denied State Farm's motion for a stay of arbitration, and directed it to proceed to arbitration with the Rutherfords.

The instant appeals by State Farm then ensued.

### THE LAW

Former article 17-A (now art 52) of the Insurance Law, i.e., the Motor Vehicle Accident Indemnification Corporation Act, and Insurance Law former § 167 (2-a) (now Insurance Law § 3420 [f] [1]) were both enacted in 1958, in order "to supplement and close the existing gaps in the compulsory liability insurance law so as to provide for the first time compulsory coverage for persons injured by uninsured motorists. (See NY Legis Ann, 1958, pp 244, 299, 436, 473.)" *(Matter of City of New York v Collins,* 126 Misc 2d 377, 379.) Insurance Law former § 167 (2-a) provided for the compulsory inclusion of an uninsured motorist indorsement in automobile liability policies with the right of the insured under the policy to seek indemnification from MVAIC. Former article 17-A of the Insurance Law provided for the assumption by MVAIC of claims by "qualified persons", i.e., persons other than those for whom protection was afforded under an automobile liability insurance policy mandated by Insurance Law former § 167 (2-a). In 1965, the Legislature amended Insurance Law former § 167 (2-a) so as to transfer from MVAIC to the insurer itself, the responsibility for payment of claims to injured persons covered under its automobile liability policy's uninsured motorist indorsement.

As a consequence of the strong policy of this State to compensate innocent victims of accidents caused by uninsured motorists, the courts of this State have held, in a series of cases, that self-insurers are in the same position as those who have purchased an automobile liability policy with respect to securing uninsured motorist protection. In *Matter of New York City Tr. Auth. (Thom)* (70 AD2d 158, *affd* 52 NY2d 1032), the courts held that the New York City Transit Authority had the obligation, as a regulated nonmunicipal self-insurer pursu-

ant to Vehicle and Traffic Law § 370 (1), to provide uninsured motorist coverage to one of its passengers when its bus was hit by an uninsured motor vehicle. Similarly, in *Matter of Allstate Ins. Co. v Shaw* (106 Misc 2d 32, *affd* 73 AD2d 863, *affd* 52 NY2d 818), the courts held that a regulated self-insured lessor of vehicles for hire pursuant to Vehicle and Traffic Law § 370 (3) had the obligation to provide uninsured motorist protection to a passenger in one of its rented cars which was hit by an uninsured motor vehicle.

Finally, in *Matter of Country-Wide Ins. Co. (Manning)* (96 AD2d 471, *affd* 62 NY2d 748, *supra*), an employee of the New York City Department of Transportation (hereinafter DOT) was injured when the DOT automobile in which he was sitting was hit by an uninsured motor vehicle. The Appellate Division, First Department, in a decision upheld by the Court of Appeals, held that the city was obligated to provide uninsured motorist coverage to its injured employee to the same extent as commercial insurers were obligated to their insureds, by virtue of Insurance Law former § 167 (2-a), even though the city, as a political subdivision, was an unregulated self-insurer, otherwise exempt from furnishing proof of financial security and responsibility under the law relating to automobile liability insurance *(see, e.g.,* Vehicle and Traffic Law § 321 [1]; § 360). Accordingly, under the holding in *Manning (supra)*, State Farm's petitions to stay the respective arbitration proceedings should have been granted, since the city had the primary obligation to provide uninsured motorist coverage to its employees Amato and Rutherford when the city-owned vehicles in which they were riding were hit by uninsured motor vehicles.

In rejecting State Farm's petitions for stays of arbitration, the court held that the city did not have to provide uninsured motorist coverage to Amato and the Rutherfords, since police cars were involved in the instant accidents. In so holding, the court relied on Insurance Law § 5202 (a) (Insurance Law former § 601 [a]), which specifically excludes "police vehicles" from the definition of "Motor vehicle" as used in the Motor Vehicle Accident Indemnification Corporation Act (Insurance Law art 52). Since *Manning (supra)* did not involve a police vehicle, and the applicability of Insurance Law § 5202 (a) was not raised therein, the court was of the view that *Manning (supra)* was not controlling in the instant proceedings.

We are well aware that the court's holdings in the instant proceedings are in accord with several decisions that have

been rendered in the First Department *(see, Matter of City of New York v Collins,* 126 Misc 2d 377, *supra; Matter of City of New York v Broas,* Sup Ct, NY County, July 1, 1985, McCooe, J., *affd* 123 AD2d 899; *Matter of City of New York v Veguilla,* Sup Ct, NY County, Apr. 11, 1986, Smith, J.; *Matter of City of New York v Williams,* Sup Ct, NY County, Mar. 5, 1986, Greenfield, J.; *Matter of City of New York v Lorenz,* Sup Ct, NY County, Nov. 27, 1985, Blyn, J.; *but see, Matter of Allstate Ins. Co. v Williams,* Sup Ct, Kings County, Feb. 7, 1985, Lodato, J.). Nevertheless, we respectfully disagree with our colleagues in the First Department.

The Motor Vehicle Accident Indemnification Corporation Act (Insurance Law art 52) was enacted in order to compensate "qualified persons" (Insurance Law § 5201) who,

"through no fault of their own, were involved in motor vehicle accidents caused by:

"(1) uninsured motor vehicles registered in a state other than New York,

"(2) unidentified motor vehicles which leave the scene of the accident,

"(3) motor vehicles registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance,

"(4) stolen motor vehicles,

"(5) motor vehicles operated without the permission of the owner,

"(6) insured motor vehicles where the insurer disclaims liability or denies coverage, and

"(7) unregistered motor vehicles" (Insurance Law § 5201 [b]). Insurance Law § 5202 (a) provides:

"5202. Definitions.

"In this article:

"(a) 'Motor vehicle' means a motor vehicle as defined in section one hundred twenty-five of the vehicle and traffic law * * * and shall exclude fire and police vehicles".

By excluding "police vehicles" from the definition of "Motor vehicle" (Insurance Law § 5202 [a]), the Legislature, in our view, intended to bar any claim made by an otherwise "[q]ualified person" (Insurance Law § 5202 [b]) against MVAIC for injuries caused by the negligent operation of a police car *(see, e.g., Matter of Downey [MVAIC],* 43 AD2d 168), and even then, as one court has held, only when the police car was being

operated with its owner's consent *(see, Matter of Downey [MVAIC], supra)*. The "police vehicles" exclusion contained in Insurance Law § 5202 (a) was never meant to apply to a situation, as in the proceedings at bar, where innocent occupants of a police car suffered injuries caused by the negligent operation of a concededly uninsured motor vehicle *(cf., Matter of Kilbride [MVAIC]*, 62 Misc 2d 641). Moreover, even if the "police vehicles" exclusion contained in Insurance Law § 5202 (a) could be interpreted to apply to a situation where the innocent occupant of a police vehicle was injured by the negligent operation of an uninsured motor vehicle, it would still not be applicable to the instant proceedings. As so interpreted, the "police vehicles" exclusion contained in Insurance Law § 5202 (a) would merely preclude recovery of uninsured motorist benefits from MVAIC under article 52 of the Insurance Law. However, in the instant proceedings, Amato and the Rutherfords are seeking recovery of uninsured motorist benefits from either State Farm or the city, pursuant to Insurance Law § 3420 (f) (1), and neither that statute nor the uninsured motorist indorsement prepared pursuant thereto by the board of directors of MVAIC and approved by the Superintendent of Insurance refers in any way to article 52 of the Insurance Law or contains an exclusion from uninsured motorist coverage under the instant factual scenarios *(see, Matter of Durant v MVAIC,* 20 AD2d 242, *mod* 15 NY2d 408, *rearg denied* 16 NY2d 716).

In conclusion, since the "police vehicles" exclusion contained in Insurance Law § 5202 (a) is inapplicable to the instant proceedings, the city has the obligation, as the primary insurer, to provide uninsured motorist coverage to Amato and the Rutherfords *(see, Matter of Country-Wide Ins. Co. [Manning],* 96 AD2d 471, *affd* 62 NY2d 748, *supra)*. Accordingly, the judgments appealed from, which denied State Farm's applications to stay arbitration, should be reversed, and the petitions granted.

BRACKEN, BROWN and SPATT, JJ., concur.

Ordered that the judgments are reversed, on the law, without costs or disbursements, and the petitioner's applications for stays of arbitration are granted.